IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARY ACOSTA,

    Plaintiff,

v.                                                                                                            2:22-cv-00840-JMR

MARTIN O'MALLEY,[1] Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Mary Acosta's motion to reverse or remand (Doc. 18), which was fully briefed on September 13, 2023. *See* Docs. 23–24. The parties consented to my entering final judgment in this case. Doc. 14. Having meticulously reviewed the entire record and being fully advised in the premises, I find that Ms. Acosta's motion is not well-taken, and it will be DENIED.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 18, 2023, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the administrative law judge's ("ALJ's") decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Acosta was born in 1969. AR 100.[4] She attended school only through the tenth grade but obtained a GED, completed three years of college; and worked as a recreational worker supervising teenagers, a kitchen aide, a dishwasher at a church, a grocery store cashier, and in various roles at a homeless shelter. AR 100, 102–05, 263, 310-11. Ms. Acosta filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") in August of 2019—alleging disability since July 12, 2019, due to bone spurs, bipolar disorder, depression,

---

[3] Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 9-1 through 9-12 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

3

a hiatal hernia, gastritis, esophagitis, hypothyroidism, a sleep disorder (insomnia), and obesity. AR 263–64, 277–85, 309.  The Social Security Administration ("SSA") denied her claims initially on November 6, 2019.  AR 185–92.  The SSA denied her claims on reconsideration on November 10, 2020.  AR 195–202.  Ms. Acosta requested a hearing before an ALJ.  AR 203–04.  On November 30, 2021, ALJ Michelle Lindsay held a hearing.  AR 93–126.  ALJ Lindsay issued her unfavorable decision on February 23, 2022.  AR 68–92.

The ALJ found that Ms. Acosta met the insured status requirements of the Social Security Act through December 31, 2024.  AR 73.  At step one, the ALJ found that Ms. Acosta had not engaged in substantial gainful activity since July 12, 2019, her alleged onset date.  *Id*.  At step two, the ALJ found that Ms. Acosta had the following severe impairments:  lumbar stenosis, right plantar fasciitis, morbid obesity status post bariatric surgery, bipolar disorder, depression, and post-traumatic stress disorder.  *Id.*  The ALJ further found that Ms. Acosta had numerous nonsevere impairments—including her "benign lipoma status post excision," "mild degenerative changes of the cervical and thoracic spine," and "mild degenerative changes of the bilateral hands and wrists."  AR 74.

At step three, the ALJ found that none of Ms. Acosta's impairments, alone or in combination, met or medically equaled a Listing.  AR 74–76.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Acosta's RFC.  AR 76–83.  The ALJ found Ms. Acosta had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb stairs and ramps, stoop, crouch, kneel, and crawl, but can never climb ladders, ropes, or scaffolds.  The claimant is able to understand, remember, and carry out simple instructions with a reasoning level of no more than 2.  She is able to maintain attention and concentration to perform and persist at simple tasks at a reasonable pace for two hours at a time without requiring redirection to task throughout a normal eight-hour workday and forty-hour workweek, with standard breaks.  She requires work that does not involve

>  interaction with the general public. Interactions with coworkers and supervisors should be superficial and incidental to the work performed. She requires work involving no more than occasional change in the routine work setting.

AR 76.

At step four, the ALJ found that Ms. Acosta was unable to perform her past relevant work as a recreational leader, kitchen helper, housekeeper/cleaner, warehouse worker, cashier checker, office clerk, or house attendant. AR 83–84. The ALJ found Ms. Acosta not disabled at step five because there are jobs that exist in significant numbers in the national economy, including small products assembler, merchandise marker, and routing clerk, that she could perform. AR 84–85. Ms. Acosta requested review by the Appeals Council. AR 260–62. On September 8, 2022, the Appeals Council denied the request for review. AR 1–7. Ms. Acosta timely filed her appeal to this Court on November 4, 2022. Doc. 1.[5]

### IV. Ms. Acosta's Claims

Ms. Acosta raises two arguments for reversing and remanding this case: (1) the ALJ's step five findings were based on an unresolved vocational conflict; and (2) the ALJ erred by finding some of her impairments nonsevere at step two and by failing to specifically discuss some of her other impairments. *See* Doc. 18 at 4–15. For the reasons explained below, the Court finds that neither of these arguments has merit.

#### A. The ALJ's step five findings are not tainted by an unresolved conflict.

Ms. Acosta argues that the ALJ failed to resolve a conflict between the vocational expert's ("VE's") testimony and the Dictionary of Occupational Titles ("DOT"), in violation of SSR 00-4p. Doc. 18 at 4–9. She further argues that, because the ALJ did not resolve this

---

[5] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 3.

conflict, the ALJ's step five findings are not supported by substantial evidence, and remand is required.  *Id*. at 4, 9.  The Commissioner argues that there was no conflict between the VE's testimony and the DOT.  Doc. 23 at 6–10.  The Court agrees with the Commissioner.

### 1. Factual Background

At the hearing, the ALJ posed a hypothetical to the VE that contained the following limitations:  (1) "able to understand, remember, and carry out simple instructions with a reasoning level of no more than two" and (2) "able to maintain attention and concentration, to perform and persist at simple tasks at a reasonable pace."  AR 118.  The VE testified that a person with these limitations could perform the jobs of small products assembler (DOT 706.684-022), merchandise marker (DOT 209.587-034), and routing clerk (DOT 222.687-022).  AR 119.  Each of these three jobs is listed in the DOT as requiring reasoning level two, which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[, and d]eal with problems involving a few concrete variables in or from standardized situations."[6]  Ms. Acosta's attorney asked the VE if the limitations in the ALJ's

---

[6] The DOT contains a definition trailer for each job, which lists the following information for each job:  (1) the Date of Last Update ("DLU"), (2) the Specific Vocational Preparation ("SVP"), (3) the General Educational Development ("GED"), (4) the Physical Demands-Strength Rating, and (5) a Guide for Occupational Exploration ("GOE").  U.S. DEP'T OF LAB., DICTIONARY OF OCCUPATIONAL TITLES, 1991 WL 688702, app. C (4th ed. 1991) (Components of the Definition Trailer).  The GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance" and is composed of three separate divisions:  Reasoning Development, Mathematical Development and Language Development.  *Id*.  Reasoning Development is further broken down into six levels:
>LEVEL 6
>Apply principles of logical or scientific thinking to a wide range of intellectual and practical problems. Deal with nonverbal symbolism (formulas, scientific equations, graphs, musical notes, etc.) in its most difficult phases. Deal with a variety of abstract and concrete variables. Apprehend the most abstruse classes of concepts.
>LEVEL 5
>Apply principles of logical or scientific thinking to define problems,

hypothetical "would preclude the ability to carry out detailed written and oral instructions." AR 120. The VE stated that they would. AR 121.

After the hearing, Ms. Acosta's attorney filed a brief asserting that the VE's testimony was not consistent with the DOT. AR 397. The ALJ addressed this argument in her decision—stating that her "hypothetical specifically states what I considered to be simple instructions–i.e., a reasoning level of no more than 2. I did not say simple, one to two step repetitive tasks.[7] [The VE's] responses are consistent with my hypothetical and there is no conflict with the DOT." AR 85.

In her decision, and consistent with the hypothetical she gave the VE, the ALJ found that Ms. Acosta had the RFC to "understand, remember, and carry out simple instructions with a

---

  collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical instructions in mathematical or diagrammatic form. Deal with several abstract and concrete variables.
  LEVEL 4
  Apply principles of rational systems . . . to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form.
  LEVEL 3
  Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.
  LEVEL 2
  Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
  LEVEL 1
  Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*Id*.

[7] The ALJ appears to be contrasting the level two reasoning limitation she imposed with level one reasoning, which requires the ability to perform "one- or two-step instructions." *See* FN 5, *supra*.

reasoning level of no more than 2" and "to maintain attention and concentration to perform and persist at simple tasks at a reasonable pace for two hours at a time without requiring redirection to task." AR 76. The ALJ found Ms. Acosta not disabled at step five because there are jobs that exist in significant numbers in the national economy that she could perform—such as small products assembler, merchandise marker, and routing clerk. AR 84–85. As discussed above, each of these jobs is listed in the DOT as requiring level two reasoning.

### 2. Applicable Law

When the disability analysis reaches step five of the sequential process, the burden shifts to the Commissioner to show that "there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments," *Jensen*, 436 F.3d at 1168, "given her age, education, and work experience." *Lax*, 489 F.3d at 1084. The Commissioner meets this burden if the decision is supported by substantial evidence. *Langley*, 373 F.3d at 1118.

Pursuant to Social Security Ruling ("SSR") 00-4p

> before relying on VE . . . evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT) . . . and Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000).

The Tenth Circuit has addressed the issue of potential conflicts between VE testimony and the reasoning levels listed for jobs in the DOT. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). In *Hackett*, the Tenth Circuit found that there was an apparent, unresolved conflict between "simple and routine work tasks" and jobs requiring level three reasoning. *Id*. The Tenth Circuit went on to state that the claimant's limitation to "simple and routine work tasks" was consistent with level two reasoning—which requires the ability to "[a]pply

8

commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Id*.

### 3. Analysis

Ms. Acosta argues that there is an unresolved conflict between the VE's testimony and the DOT. The Court is not persuaded. Ms. Acosta's arguments rely on an incomplete statement of the limitations the ALJ imposed and are not supported by the full text of the limitations the ALJ imposed, or the case law she cites. In addition, Tenth Circuit precedent does not support finding a conflict here.

Ms. Acosta's arguments rely on an incomplete statement of the limitations the ALJ imposed. Throughout her motion she repeatedly refers to only a portion of the ALJ's RFC limitations/VE hypothetical—arguing that the ALJ limited her to "simple instructions" and "simple tasks."[8] This is misleading. In reality, the ALJ found that Ms. Acosta had the ability to "understand, remember, and carry out simple instructions **with a reasoning level of no more than 2**." AR 76, 118 (emphasis added). This means the ALJ found Ms. Acosta had the ability to understand simple instructions with a reasoning level of no more than two; the ability to remember simple instructions with a reasoning level of no more than two; and the ability to carry out simple instructions with a reasoning level of no more than two. Reading the ALJ's limitations as a whole, Ms. Acosta's arguments fail. For example, Ms. Acosta asserts that "the ALJ's question [to the VE] included far more mental limitations than the one applying to

---

[8] *See* Doc. 18 at 4 (stating only that ALJ limited Ms. Acosta to "simple instructions and simple tasks"); *Id.* at 6 (stating that ALJ limited Ms. Acosta to "simple tasks and simple instructions"); *Id.* at 7 (stating that the "most Ms. Acosta could do was reduced to simple tasks and simple instructions"); *Id.* (claiming ALJ's questions to VE included far more mental limitations than the one applying to reasoning level, such as 'simple instructions' and 'simple tasks'") .

reasoning level, such as 'simple instructions' and 'simple tasks.'" Doc. 18 at 7. But, as explained above, the ALJ found that Ms. Acosta was limited to simple instructions **with a reasoning level of no more than two** and that she had the ability to carry out simple instructions **with a reasoning level of no more than two**. *See* AR 76, 118 (emphasis added). Ms. Acosta does not explain how someone limited to "simple tasks" is somehow more limited than someone who can only "understand, remember, and carry out simple instructions with a reasoning level of no more than 2." *Id.* The Court discerns no conflict based on this argument.

Even if "simple tasks" imposed greater limitations—which the Court does not find—Tenth Circuit precedent does not support finding a conflict. The Tenth Circuit has held that a claimant's limitation to "simple and routine work tasks" is *consistent* with level two reasoning. *Hackett*, 395 F.3d at 1176; *see also Stokes v. Astrue*, 274 F. App'x. 675, 684 (10th Cir. 2008) (unpublished) (citing *Hackett*, 395 F.3d at 1176) (reiterating that "a limitation 'for simple and routine work tasks' was inconsistent with the demands of level-three reasoning but consistent with the demands of level-two reasoning").[9] As such, there is no conflict between Ms. Acosta's limitation to "simple tasks" and jobs requiring reasoning level two.

Ms. Acosta's cited case law is unhelpful to her claims. The Court discerns no conflict between the VE's testimony and the DOT based on her citations. Unlike the cases Ms. Acosta cites, the ALJ in this case did not merely limit Ms. Acosta to simple instructions or simple tasks. Instead, the ALJ found Ms. Acosta had the RFC to "understand, remember, and carry out simple

---

[9] The Commissioner cites several cases from this district applying this particular reading of *Hackett*. Doc. 23 at 7–8. The Court is aware that other courts have construed this statement in *Hackett* as dicta. *See C.K.D. v. Kijakazi*, No. 21-CV-02155-NYW, 2022 WL 4290472, at *5 (D. Colo. Sept. 16, 2022) (unpublished) (acknowledging "significant district-court split of authority on this issue" and collecting cases). Ms. Acosta does not meaningfully discuss *Hackett* or challenge the Commissioner's reading of the case. *See* Doc. 24 at 2 (attempting only to distinguish *Hackett* based on the VE's testimony on cross examination).

instructions **with a reasoning level of no more than 2**." AR 76, 118 (emphasis added).  The ALJ—addressing essentially the same argument now raised in this Court—explained that her hypothetical to the VE defined what she meant by "simple," that is, "a reasoning level of no more than 2." AR 85.  The ALJ went on to find that "[the VE's] responses are consistent with my hypothetical and there is no conflict with the DOT."  *Id.*  The Court agrees with the ALJ.  The Court declines Ms. Acosta's invitation to find a conflict between the ability to "understand, remember, and carry out simple instructions **with a reasoning level of no more than 2**" and jobs that require **a reasoning level of two**.  Ms. Acosta cites no cases with analogous language that would support finding a conflict here.

The Court is also not persuaded by Ms. Acosta's argument that the VE's testimony on cross-examination demonstrates a conflict.  At the hearing, Ms. Acosta's attorney asked the VE if the limitations included in the ALJ's hypothetical "would preclude the ability to carry out detailed written and oral instructions."  AR 120.  The VE answered affirmatively.  AR 121.  Ms. Acosta asserts that this VE testimony "clearly established that an individual who could perform only simple tasks or understand only simple instructions could not carry out the detailed instructions required by level 2 occupations."  Doc. 18 at 6.  Because Ms. Acosta's attorney did not ask the VE if the limitations included in the ALJ's hypothetical would preclude "detailed **but uninvolved**" instructions, as required for reasoning level two, the Commissioner asserts that the VE's testimony does not demonstrate a conflict.  Doc. 23 at 7 (emphasis added).  The Court agrees with the Commissioner.  Arguments based on a fine parsing of language must account for all words.  As discussed above, the ALJ specifically included level two reasoning in Ms. Acosta's RFC.  Because of this, Ms. Acosta faces an uphill battle if she hopes to convince the Court that there is a conflict between an RFC limiting her to level two reasoning and jobs

requiring level two reasoning.  The Court is not persuaded that the VE's testimony on cross examination creates a conflict here.

Finally, Ms. Acosta's argument that remand is required because the ALJ did not ask the VE if her testimony was consistent with the DOT is without merit.  *See* Doc. 18 at 8–9.  In general, an ALJ must inquire about conflicts between a VE's testimony and the DOT.  *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (stating that ALJ "will inquire" about conflicts).  However, when there are "no conflicts between the VE's testimony and the DOT's job descriptions, the ALJ's error in not inquiring about potential conflicts [is] harmless." *Poppa*, 569 F.3d at 1174.  As discussed above, the Court finds no conflict between the VE's testimony and the DOT.  Therefore, the ALJ's failure to ask about conflicts in this case is harmless.

### B. The ALJ did not err by finding certain impairments nonsevere at step two, or by failing to explicitly mention certain diagnoses.

Ms. Acosta argues that "remand is required because the ALJ misapplied the agency's step two *de minimis* severity standard" regarding her physical impairments.  Doc. 18 at 9.  She argues that the ALJ erred in finding nonsevere her "mild degenerative changes of the cervical and thoracic spine" and "mild degenerative changes of the bilateral hands." *Id.* at 10.  She also argues that the ALJ erred by not explicitly discussing her bilateral shoulder pain, carpal tunnel syndrome, or diffuse idiopathic skeletal hyperostosis of the thoracic spine ("DISH"). *Id*.  The Commissioner argues that the ALJ adequately considered these impairments and symptoms throughout the sequential evaluation process and, alternatively, that any error is harmless.  Doc. 23 at 11–17.  The Court agrees with the Commissioner.

The Court finds Ms. Acosta's arguments alleging step two errors to be without merit. Step two errors generally are harmless so long as the ALJ does not deny benefits at step two, but

instead continues to the next step of the sequential evaluation process.  *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).  "[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished) ("an error at step two of the sequential evaluation concerning one impairment is usually harmless when the ALJ, as occurred here, finds another impairment is severe and proceeds to the remaining steps of the evaluation").  In the instant case, the ALJ found Ms. Acosta had several severe impairments and proceeded to the other steps of the sequential evaluation process.  Thus, the ALJ's failure to find certain impairments severe at step two is not reversible error.

Of course, this does not end the inquiry.  The failure to adequately consider impairments may result in errors at later steps in the sequential evaluation process.  In assessing a claimant's RFC, the ALJ is required to consider "the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).  In her motion, Ms. Acosta broadly claims that the ALJ failed to consider her impairments in assessing her RFC.  *See* Doc. 18 at 14–15.  She argues that the ALJ failed to consider her "shoulder impairments" and "non-severe spinal and hand impairments" and that this failure led the ALJ to erroneously conclude that she could perform jobs that require frequent use of her hands and arms to "finger, handle, and reach."  *Id*. at 14.  The Court finds this argument unpersuasive for two reasons.  First, the Court agrees with the Commissioner that the ALJ adequately considered her shoulder pain resulting from a lipoma, as well as the degenerative changes to her spine and hands throughout the sequential evaluation process.  *See* Doc. 23 at 12–15; *see also* AR 75, 78–84.  Second, Ms.

Acosta fails to point to record evidence showing greater RFC limitations from these impairments than those found by the ALJ. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (rejecting plaintiff's argument that the ALJ failed to take into account his inability to perform repetitive hand movements where the medical records did "not show that the limitations in plaintiff's use of his hands included an inability to perform repetitive motions.")

Finally, the Court is not persuaded that the ALJ erred by failing to explicitly discuss her diagnoses of carpal tunnel syndrome and DISH. First, the ALJ's decision clearly shows that she was aware of Ms. Acosta's DISH diagnosis, and that she considered the treatment and limitations connected to this condition. *See* AR 74, 80 (discussing November 5, 2021 X-ray showing DISH), AR 80 (discussing exams by PAC Smith before and after November 5, 2021 X-ray showing DISH). Second, although the ALJ failed to explicitly mention carpal tunnel syndrome in her decision, the Court is not persuaded that the ALJ failed to consider this diagnosis.

The ALJ's failure to explicitly mention a diagnosis does not necessarily require this Court to remand. In *Bales*, the claimant contended that the ALJ "failed to consider that she suffers from carpal tunnel syndrome, migraines, fatigue, insomnia, high cholesterol, gastroesophageal reflux disease, and left-shoulder-impingement syndrome." *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (unpublished). Unpersuaded, the Tenth Circuit pointed out that the ALJ

> noted that, when assessing a claimant's RFC, 'all of the claimant's impairments, including impairments that are not severe' must be considered . . . . Further, the ALJ stated that she had 'considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' . . . and that she had 'carefully considered all of the evidence' in finding Ms. Bales not disabled.

*Id.* The Tenth Circuit then recognized that an ALJ is not required to discuss every piece of evidence and that a reviewing court should take her at her word if she says she has considered all

the evidence. *Id.* (quoting *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) and *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009)).  Accordingly, the court concluded that "the ALJ thoroughly discussed the medical evidence, and there is no indication that, **despite not expressly mentioning** Ms. Bales' other medical problems, the ALJ did not take them into account." *Id.* (emphasis added).  Moreover, the court pointed out that "even if the ALJ failed to account for all of Ms. Bales' medical problems, Ms. Bales does not identify how any of these conditions, either individually or in combination, affected her functioning during the time she was disabled. . . .  In that case, any error would be harmless." *Id.* (citations omitted).

As in *Bales*, the ALJ in this case expressly stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."  AR 74.  Also as in *Bales*, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ."  AR 76.  Like *Bales*, the Court takes the ALJ's word here that she considered all the evidence.  *See Wall*, 561 F.3d at 1070 ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word."); *Hackett*, 395 F.3d at 1173 (noting "our general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter").

Finally, as in *Bales*, Ms. Acosta has failed to identify how the conditions she alleges were inadequately discussed—her DISH and carpal tunnel syndrome—affected her functioning or resulted in any greater RFC limitations.  "[W]ithout any specific functional limitations, there is no obvious impact on the RFC, as the diagnoses alone do not automatically establish [s]he was disabled."  *Terwilliger v. Comm'r, Soc. Sec. Admin.,* 801 F. App'x 614, 622 (10th Cir. 2020) (unpublished) (citing *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988)).  As in *Bales* and

15

*Terwilliger*, Ms. Acosta's failure to point to evidence showing specific functional limitations renders the ALJ's failure to explicitly discuss certain diagnoses harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

V.     **Conclusion**

For the reasons stated above, the Court finds that the ALJ applied the correct legal standards, and her decision is supported by substantial evidence. Neither of Ms. Acosta's arguments has merit.

IT IS THEREFORE ORDERED that Plaintiff's motion to reverse and remand (Doc. 18), is DENIED.

IT IS FURTHER ORDERED that the Commissioner's final decision is AFFIRMED, and this case is dismissed with prejudice.

_____
JENNIFER M. ROZZONI
United States Magistrate Judge
Presiding by Consent